**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

JTH TAX, INC., d/b/a
LIBERTY TAX SERVICE,

       Plaintiff,

v.                                                   Action No. 2:15cv558

CHARLES HINES,

       Defendant.

**UNITED STATES MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

By order of reference dated May 12, 2016 (ECF No. 26), this case was referred to the undersigned United States Magistrate Judge for a report and recommendation on defendant Charles Hines' motion for change of venue (ECF No. 14), pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, the Court **RECOMMENDS** that defendant's motion for change of venue be **DENIED**.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On December 23, 2015, plaintiff JTH Tax, Inc., d/b/a Liberty Tax Service ("Liberty"), filed a four-count complaint against defendant Charles Hines ("Hines"). Compl., ECF No. 1. The complaint alleges that Hines breached certain franchise agreements with Liberty by failing to comply with his post-termination obligations (count one) and failing to make required royalty and advertising payments to Liberty (count three), infringed Liberty's trademarks (count two),

and breached certain promissory notes by failing to make required payments of principal and interest due (count four). Compl. ¶¶ 31-49, ECF No. 1.

The complaint alleges the following facts, among others. Liberty is a Delaware corporation and its principal place of business is located at its headquarters in Virginia Beach, Virginia. Compl. ¶ 1. Hines resides in the state of Maryland. Compl. ¶ 2. Liberty is in the business of selling franchises engaged in the preparation of tax returns. Compl. ¶ 2. Liberty owns certain federally registered trademarks, which it authorizes franchisees to use in the course of their operations. Compl. ¶¶ 8, 36-37. During 2012, Hines signed three separate agreements with Liberty to establish and operate tax service franchises within three, specified territories located in Maryland. Compl. ¶¶ 9–11. In conjunction with the purchase and operation of his tax franchises, Hines traveled to Virginia Beach to attend training classes and regularly submitted reports to and communicated with persons located at Liberty's Virginia Beach headquarters. Compl. ¶ 3a.

On the date Hines entered into the latter two franchise agreements, he also executed two promissory notes payable to Liberty, each in the amount of $32,000.00. Compl. ¶ 26. Further, as part of each franchise agreement, Hines agreed to pay a monthly advertising fee to Liberty, at a rate of five percent of a franchise's monthly gross receipts, as well as a royalty payment totaling fourteen percent of a franchise's gross receipts, subject to certain, specified minimum royalty payments. Compl. ¶¶ 23-24. Due to Hines' alleged failure to make such payments, the complaint alleges that he not only owes Liberty $60,460.66 in past due royalty and advertising payments, but also the outstanding principal balances of $25,600.00 and $29,496.33, respectively, due on each promissory note, along with unpaid interest. Compl. ¶¶ 25-26.

In response to these and other alleged breaches, Liberty terminated Hines' franchise rights on June 3, 2015. Compl. ¶ 12. Pursuant to the franchise agreements, following termination, Hines was required, among other things, to remove all Liberty signs from his premises, cease identifying himself as a Liberty franchisee, pay all outstanding sums due to Liberty, transfer customer lists and files to Liberty, and adhere to covenants not to compete or solicit certain prior customers for business. Compl. ¶¶ 13-14. Hines reportedly failed to comply with such terms and covenants. Compl. ¶ 15. Notwithstanding that in August and November 2015, Liberty sent cease and desist letters demanding the return of customer files and compliance with non-compete and other clauses, Hines allegedly retained customer files and continued to engage in the tax preparation business from an office located in Baltimore, Maryland, which continues to use Liberty signs and trademarks. Compl. ¶¶ 17-21.

Accordingly, Liberty filed the complaint now pending before the Court and seeks injunctive relief, damages for breach of contract and trademark infringement, and attorneys' fees and costs. Compl. 9-11. Although the complaint alleges that Hines' franchise agreements contain a "consent to jurisdiction clause in favor of Virginia" and/or a "forum selection clause specifying venue in this Court," Compl. ¶¶ 3b, 6, the three franchise agreements attached to the complaint (exhibits 5-7) specify otherwise. ECF No. 1-5, 1-6, 1-7; *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) (considering facts contained in documents incorporated into a complaint when evaluating a motion to dismiss). In this respect, the three franchise agreements are identical. Section 15b of the franchise agreements, entitled "Jurisdiction and Venue," reads, in pertinent part, as follows:

> In any suit brought by [Liberty], which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of [Liberty's] National

3

> Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia.

ECF No. 1-5 ¶ 15b, ECF No. 1-6 ¶ 15b, ECF No. 1-7 ¶ 15b. Paragraph 4 of the signed "Maryland Addendum" to each of these franchise agreements, however, specifies that:

> Section 15.b. of the franchise agreement is deleted and in its place is substituted the following language:
>
> "You agree to bring any claim against us, including our present and former employees, agents, and affiliates, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association."

ECF No. 1-5 at 21; ECF No. 1-6 at 23; ECF No. 1-7 at 23.

In response to the complaint, defendant Hines, proceeding *pro se*, filed a motion for a change of venue (ECF No. 14), and a motion to dismiss (ECF No. 15).[1] Hines seeks the transfer of this case to the District of Maryland because that reportedly is where he resides, the "primary office in dispute" is located, and a substantial portion of the events giving rise to the complaint occurred, and because it is readily accessible to those who may be involved in the case. Def.'s Mot. for Change of Venue ("Def.'s Mot.") 1, ECF No. 14. With the motion for change of venue fully briefed, this matter is ripe for consideration.

## II. STANDARD OF REVIEW

Unless otherwise provided by law, venue in a civil action brought in federal court exists in a judicial district: (1) where any defendant resides, if all defendants reside in the same state, (2) where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the actions is situated" or (3) where a defendant is subject to personal jurisdiction at the time the action commences, if there otherwise is no

---

[1] The defendant's motion to dismiss will be addressed in a separate report and recommendation.

district in which the action may be brought. 28 U.S.C. § 1391(b)(1)–(3) (2012). A party challenging venue may seek to dismiss or transfer a case on the ground that venue is "improper." Fed. R. Civ. P. 12(b)(3); *see* 28 U.S.C. § 1406(a) (2012) (authorizing dismissal or transfer of a case, based upon the interest of justice, to another district or division in which such case could have properly been brought). Analysis of whether a chosen venue is "'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . . ." *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013) (rejecting claim that a forum selection clause plays any role in the determination of whether venue is improper). In the typical case, this venue inquiry turns upon "whether the case falls within one of the three categories set out in § 1391(b)." *Id.*

Alternatively, if venue is proper in the judicial district in which a complaint is originally filed, a party may move to change venue pursuant to 28 U.S.C. § 1404. Section 1404 authorizes a court to transfer a case to any district or division in which the plaintiff could have also properly filed suit, "[f]or the convenience of the parties and witnesses, in the interest of justice . . . ." 28 U.S.C. § 1404(a) (2012). This grant of authority to change venue from one district to another seeks to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26 (1960)). A party seeking such a transfer bears the burden of demonstrating entitlement to it. *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 324 (E.D. Va. 2004).

A court assessing a motion to transfer venue must inquire: "'(1) whether the claims might have been brought in the transferee forum; and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.'" *JTH Tax, Inc. v. Lee*,

482 F. Supp. 2d 731, 735 (E.D. Va. 2007) (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)). With respect to the latter inquiry, a court is vested with the discretion to transfer a case to another district or division based upon an "'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). This involves a consideration of factors pertaining both to the parties' "private" interests, as well as to the "public" interest. *Atlantic Marine Const., Inc.*, 134 S. Ct. at 581 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *JTH Tax, Inc.*, 482 F. Supp. 2d at 735 (identifying factors to be considered as a plaintiff's choice of venue, witness convenience and access, the parties' convenience, and the interest of justice). It is against this backdrop that the Court will address Hines' motion.

### III. ANALYSIS

A.    **Venue is proper in the Eastern District of Virginia.**

Although Hines primarily seeks a change of venue pursuant to 28 U.S.C. § 1404, he also arguably contends that venue is improper pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406. Def.'s Mot. 2 ("all of the factors giving rise to the principal cause of action . . . occurr[ed] . . . within the State of Maryland [and] would dictate . . . that the only proper venue should be the United States District Court for Carroll County").[2] For venue to be proper in the Eastern District of Virginia, the case must fall within one of the three venue categories described in 28 U.S.C. § 1391(b). As plaintiff, Liberty bears the burden of establishing that venue is proper in the Eastern District of Virginia. *See T. and B. Equip. Co. v. RI, Inc.*, No. 3:15cv337, 2015 WL 5013875, at *2 (E.D. Va. Aug. 24, 2015).

---

[2] Inasmuch as Carroll County is located in Maryland, the Court construes plaintiff's motion to refer to a federal court located within the District of Maryland.

Liberty contends that venue is proper in this district because "a substantial part of the events, or omissions giving rise the claim[s] occurred" here.[3] 28 U.S.C. § 1391(b)(2). In both his motion and reply to Liberty's memorandum in opposition, Hines vigorously disputes this claim.[4] Hines contends, among other things, that all or a substantial portion of the events giving rise to the complaint occurred in Maryland, where he operated his Liberty franchises for three years, until termination in June 2015, and where he incurred financial losses and suffered the impacts resulting therefrom. Def.'s Mot. 2, 8-10; Def.'s Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Change of Venue ("Def.'s Reply") 4, ECF No. 27. While emphasizing the three years in which he did business in Maryland, however, Hines also admits that, prior to executing the franchise agreements, he traveled to Virginia Beach in May 2012 for an open house and in late June 2012 for a week-long operations training course.[5] Def.'s Mot. 3, 9. He indicates that Liberty received either $40,000 or $82,000 in cash from him, Def.'s Reply 11-12, and he admits that he regularly submitted monthly reports to Liberty in Virginia Beach. Def.'s Mot. 10.

---

[3] Liberty neither asserts nor do the facts in the complaint or the parties' filings suggest that "a substantial part of the property that is the subject of the action is situated" in the Eastern District of Virginia. *See* 28 U.S.C. § 1391(b)(2). Therefore, no need exists to examine whether venue lies in the district based upon disputed property allegedly located here.

[4] In ruling upon a motion to dismiss for improper venue filed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, a court may consider evidence outside the pleadings. *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006).

[5] Hines contends that the Liberty franchise agreements were sent to and signed by him in Maryland. Def.'s Reply 8. He makes no claim about where Liberty's representatives signed such documents. Nor does he contest that the signed documents were returned to Liberty in Virginia. Also, it bears noting that the first agreement and addendum signed by Hines are dated July 3, 2012, ECF No. 1-5 at 19, 21, which follows on the heels of Hines' five-day training session in Virginia Beach in late June 2012. Def.'s Mot. 3, 9. At this point, the record is insufficient to conclude where each party signed the franchise agreements and addenda. Therefore, the Court attaches greater significance to the fact that agreements took effect upon acceptance in Virginia.

Further, it is apparent that other significant events pertaining to the parties' relationship and the pending claims took place in Virginia, where Liberty maintains its headquarters and principal place of business in Virginia Beach. In this regard, the franchise agreements forming the basis of the parties' relationship were made in Virginia and specify that such agreements take effect "upon . . . acceptance in Virginia" by one of Liberty's authorized representatives. ECF No. 1-5 ¶ 15a, ECF No. 1-6 ¶ 15a, ECF No. 1-7 ¶ 15a. The agreements further provide that "Virginia law governs all claims which in any way relate to or arise out of [the] Agreement[s] or any of the dealings of the parties hereto." *Id.* The agreements also: (a) provide for Hines' use of Liberty's trademarks during the operation of any franchise and the cessation of such use upon the conclusion or termination of such agreements, *id.* at ¶¶ 6, 9; (b) require Hines to submit monthly gross receipts reports and an annual profit and loss statement to Liberty, *id.* at ¶ 7a-7b; (c) require that Hines, upon termination, send all monies due to Liberty and deliver operations manuals, customer information, and tax returns and records to Liberty, *id.* at ¶ 9f-9h; and (d) direct Hines to provide any required notices to Liberty by mail, courier, or facsimile to the address of Liberty's national office in Virginia Beach, *id.* at ¶ 18. Finally, the two promissory notes require Hines to pay sums due under the notes to the same Virginia Beach address and specify that such notes "shall be construed in all respects and enforced according to the laws of the Commonwealth of Virginia." ECF No. 1-12; ECF No. 1-13.

These facts establish that a substantial part of the events or omissions giving rise to Liberty's claims took place in the Eastern District of Virginia. Specifically, they show that Hines entered into three contracts and addenda and two promissory notes (all governed by Virginia law) with a Virginia company, undertook the obligation to and directed some payments to that Virginia company in Virginia, while allegedly neglecting to send other required payments

8

to Virginia, and in the course of his relations with that Virginia company traveled to and regularly sent and agreed to send communications and other items to Virginia. Such activity is sufficient to establish venue in this district. *See Prod. Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004) ("[B]ecause plaintiff's Virginia headquarters is located in this district, and because defendant's communications with and visits to that headquarters come within the 'sequence of events underlying the claim' at issue here, those same business contacts provide a basis for venue as well as for personal jurisdiction.") (internal citations omitted); *see also Cent. Progressive Bank v. Kuntz*, No. 08-4147, 2008 WL 5264260, at *5 (E.D. La. Dec. 17, 2008) (holding that in a loan guarantee dispute, venue was proper in the district in which the loan proceeds were paid out of and in which the defendants failed to repay the loan); *Access Control, Inc. v. Landrum*, No. 3:06cv414, 2007 WL 128607, at *5 (E.D. Va. Apr. 27, 2007) (holding that venue was proper, in part, because "[t]he claims of breach of contract and breach of fiduciary duty are founded upon the employment contract signed in, formed under, and governed by Virginia and its laws"); *PTG Logistics, LLC v. Bickel's Snack Foods, Inc.*, 196 F. Supp. 2d 593, 604 (S.D. Ohio 2002) (holding that venue was proper in the Southern District of Ohio where contract payments were made in Ohio and the damage was felt in Ohio).

That some other events and omissions may have also occurred in Maryland does not establish that venue in this district is improper. Indeed, "it is possible for venue to be proper in several judicial districts." *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 726 (E.D. Va. 2008). For this reason, Hines' claim that venue is improper in the Eastern District of Virginia because the alleged events and omissions predominantly occurred in Maryland is incorrect. This is so because a plaintiff "need not demonstrate 'that [its] chosen venue has the most substantial contacts to the dispute,' but '[r]ather . . . that a substantial part of

9

the events occurred in that venue, even if a greater part of the events occurred elsewhere." *T. and B. Equip. Co.*, 2015 WL 5013875, at *3 (citations omitted); *see Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (noting that legislation modifying 28 U.S.C. § 1391 authorizing venue where a "substantial part" of the events or omissions took place was designed to eliminate a need to determine which district had the most significant connections to a claim). Inasmuch as the record discloses that a substantial part of the events and omissions giving rise to Liberty's claims occurred in this district, venue is proper.

**B.    The section 1404(a) factors do not weigh in favor of transfer to Maryland.**

    **1.    Venue lies in the District of Maryland.**

Before considering whether to make a discretionary transfer of a case to another district, the Court must first determine whether venue lies in the proposed transferee district, here the District of Maryland. *See* 28 U.S.C. § 1404. Liberty's opposition to Hines' motion to change venue neither discusses nor contests that, if the Court transferred the case, venue would lie in Maryland. Inasmuch as the complaint alleges and defendant Hines indicates that he resides in Maryland (Def.'s Mot. 11), that alone is sufficient to determine that Liberty could have originally and properly filed suit in Maryland, pursuant to 28 U.S.C. § 1391(b)(1). Further, as a resident of Maryland, Hines is subject to personal jurisdiction in that district as well. *See Milliken v. Myer*, 311 U.S. 457, 464 (1940). The Court, therefore, turns to weighing the section 1404 private and public interest factors pertinent to the exercise of discretion whether to grant such a transfer.

    **2.    Liberty's choice of venue in its home forum weighs against transfer.**

As the party filing a lawsuit, a plaintiff is vested with the "privilege" of making the initial selection of a judicial forum. *Koh,* 250 F. Supp. 2d at 633. Although not dispositive, courts

typically accord significant weight to a plaintiff's original choice of forum. *Stewart Org., Inc.*, 487 U.S. at 29; *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (noting that "unless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)). This is particularly true when a plaintiff files suit in its home forum. *Intranexus, Inc. v. Siemens*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002) (noting that this counsels "strongly [in] favor[] of retaining venue in [that] Court"); *compare Hanover Ins. Co. v. Paint City Contractors, Inc.*, 299 F. Supp. 2d 554, 556 (E.D. Va. 2004) (noting that a plaintiff who files suit in a foreign forum having little or no connection to the cause of action loses the benefit of the deference typically accorded a plaintiff's original choice of forum).

The choice of forum also bears upon the issue of the relative convenience of litigation for the parties. Although Hines asserts he will experience inconvenience if he must travel to and litigate this case in Virginia, Liberty correctly observes that "[w]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." Pl.'s Mem. 6 (citing *Bd. Of Trs., Sheet Metal Workers Nat'l Fund*, *v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988)); *see JTH, Tax, Inc.*, 482 F. Supp. 2d at 738 (noting that "simply shift[ing] the balance of inconvenience from [defendant] to [plaintiff] . . . does not weigh persuasively in favor of transfer").

Liberty has its headquarters and principal place of business in Virginia Beach, Virginia. Compl. ¶ 1. Liberty, therefore, is a citizen of Virginia for purposes of diversity jurisdiction and has filed suit in its home forum, the Eastern District of Virginia. *See* 28 U.S.C. § 1332(c)(1) (2012) (providing that, for purposes of section 1332, a corporation is deemed to be a citizen of its state of incorporation and of the state in which it maintains its principal place of business). Also,

11

as discussed above, it appears that a significant number of events and omissions pertaining to Liberty's claims occurred in Virginia. Thus, the judicial district in which Liberty filed suit is not only the one from which Liberty operates, but also has a real and significant connection to issues pertaining to the formation of the parties' relationship, to the legal documents purporting to govern that relationship, to Hines' performance during that relationship, to Liberty's decision to terminate that relationship, and to Hines' satisfaction of any post-termination obligations with respect to that relationship. For these reasons, Liberty's choice of forum weighs heavily in favor of retaining this matter in the Eastern District of Virginia. To overcome this, Hines must show that the remaining section 1404 factors "clearly point towards trial in the alternative forum." *Piper Aircraft Co.*, 454 U.S. at 255; *see Eastern Scientific Marketing, Inc. v. Tekna-Seal, Inc.*, 696 F. Supp. 173, 179 (E.D. Va. 1988) ("Plaintiff's privilege to choose, or not be ousted from, his chosen forum is highly esteemed.").

### 3. Consideration of witness convenience is a neutral factor.

The issue of witness convenience "is often dispositive in transfer decisions." *Koh*, 250 F. Supp. 2d at 636 (quoting *Bd. of Trs., Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1258). In seeking a transfer, Hines contends that "distance, time, and travel will be elements that affect the case for the Defendant and the witnesses[,]" and that "[a]ll current potential witnesses in this case reside in the State of Maryland . . . ." Def.'s Mot. 8. In this regard, he also asserts that the federal court in Norfolk is "approximately 260 miles from the localities [and the tax franchise offices he operated] addressed in the Complaint." *Id.* at 7. Having to try the case in Virginia, Hines contends, will "pose serious obstacles in the presentation of [his] case for [him] and the witnesses," and may result in absences that could prove detrimental to his defense. *Id.* at 8. Liberty contends that Hines has failed to consider Liberty's witnesses, the "vast majority of

whom [Liberty asserts] live and work in Hampton Roads." Pl.'s Mem. in Opp. Def.'s Mot. for Change of Venue (Pl.'s Mem.") 6. Liberty also argues that Hines' bald allegations regarding witness inconvenience, without more, are insufficient to satisfy a movant's burden to establish a basis for a change in venue. *Id.* at 5-6.

When, as here, both parties claim inconvenience for their witnesses, a court may find that this factor is of little analytical value. *See, e.g.*, *BHP Int'l Inv., Inc. v. OnLine Exchange, Inc.*, 105 F. Supp. 2d 493, 499 (E.D. Va. 2000) (holding that witness convenience did not aid analysis where all of the defendant's witnesses were in Missouri and the majority of the plaintiff's witnesses were in Virginia, because at least one party would have been burdened in its witnesses traveling across multiple states); *Intranexus, Inc.*, 227 F. Supp. 2d at 584–85 (noting that the plaintiff would bear the burden of witnesses' travel expenses and inconvenient travel through busy airports across multiple states, asserting that the "Defendant [would] bear the same burden if venue [was] retained in [the alternate forum,]" and subsequently holding that "the convenience of the . . . witnesses does not assist the Court in its analysis . . . .").

To assist a court in analyzing this factor and assessing the importance and availability of specific witnesses, any party claiming that witness inconvenience necessitates a venue change should supply a court with reliable information, identifying the witnesses he intends to call, along with information about their expected testimony. *Koh*, 250 F. Supp. 2d at 636 (noting the "party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details" about the anticipated witnesses to give the court the information needed to weigh materiality and inconvenience). Here, however, neither party has provided the Court with a witness list or affidavits or other summaries of expected testimony to enable the assessment of witness testimony and their relative ability to come to court in the Eastern District of Virginia or

Maryland.  Because the parties have only provided the Court with general information about witness inconvenience, this factor neither aids the Court's analysis nor supports Hines' request for a change of venue.  *See Bd. of Trs., Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1258 ("[T]he influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony.") (footnotes omitted).

### 4. The interest of justice favors retaining venue before this Court.

The final factor to be considered under section 1404(a) is the interest of justice.  Considerations falling within the rubric of the interest of justice include:  "(1) the pendency of a related action, (2) the court's familiarity with the applicable law, (3) docket conditions, (4) access to premises that might have to be viewed, (5) the possibility of an unfair trial, (6) the ability to join other parties, (7) the possibility of harassment, and (8) the interest of having local controversies decided at home."  *Virginia Innovation Sciences, Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 872 (E.D. Va. 2013) (citations omitted).

With respect to the pendency of related actions, Hines argues that certain actions instituted by the Attorney General of Maryland involving other Liberty franchisees weigh in favor of a transfer of venue.  Def.'s Reply 7, 15.  To that end, Hines has attached to his reply news articles indicating that criminal charges were brought in Maryland against a former owner of six Liberty franchises and eight of her employees for preparing thousands of false tax returns, submitted in the names of homeless and other individuals, and conspiring to steal monies from the state of Maryland.  *Id.* at 21-24.  Other articles attached to Hines' filing indicate that the Comptroller of Maryland also suspended 16 additional Liberty franchise locations to prevent the processing of questionable electronic and paper tax returns with suspicious tax data.  *Id.* at 25-26,

29-30. The Court's review of these articles, however, fails to establish any connection between such criminal cases and investigations and the civil breach of contract and trademark infringement claims brought by Liberty in this case. Therefore, the Court finds no basis to classify such matters as related pending actions or to conclude that they support Hines' request to transfer this matter to the District of Maryland.

Similarly, the issue of access to premises located in Maryland does not appear to be a significant venue consideration in this case, notwithstanding Hines' suggestion to the contrary. Def.'s Reply 8 (Hines has a "storage locker in Maryland full of the *property* of [his] closed Hanover tax office and [his] three Walmart kiosks") (emphasis in original); Def.'s Mot. 7-8 ("[t]he geographical nature of Hines's primary Liberty office . . . would be a fact in evidence, [] and its distance from Baltimore are major factors"). The complaint alleges that Liberty terminated Hines' franchises on June 3, 2015, due to "multiple breaches, including advertising outside of his franchise territory, and failure to pay amounts owing." Compl. ¶ 12. Proof pertaining to such breaches and Hines' compliance with his post-termination obligations and his making of payments under the two promissory notes, if it exists, should be readily ascertainable by both parties, without need for the Court to access any premises. Similarly, although the issue of trademark infringement necessarily touches upon whether Hines used Liberty's marks in Maryland after being terminated, evidence of the same, if it exists, also should be readily accessible to both parties without need for access to premises. Also, to the extent that Hines contends he has taken down the "'Liberty' part of [his] roof sign," Def.'s Reply 17-20, any need for inspection and access has been further reduced. Accordingly, there appears to be no need to access premises located in the District of Maryland to resolve the matters at issue in this case.

With respect to the law applicable to the dispute, Hines argues that, "as a resident and as franchisee operating in Maryland," Maryland law should govern this dispute and transfer to that district is appropriate. Def.'s Mot. 4. As noted above, however, the franchise agreements and the promissory notes each contain a choice of law provision dictating that Virginia law would control any claims arising under or relating to such agreements. ECF No. 1-5 ¶ 15a, ECF No. 1-6 ¶ 15a, ECF No. 1-7 ¶ 15a, ECF No. 1-12 at 2, ECF No. 1-13 at 2. Such choice-of-law provisions are generally enforceable under Virginia law.[6] *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (noting that "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances"). Furthermore, where parties submit to an agreement with the written expectation that both will provide signatures so as to render the agreement binding, and both parties sign the agreement, then the agreement and its provisions become binding. *Words, Inc. v. Xerox Corp.*, No. 99-1182, 2000 U.S. App. LEXIS 3173, at *3–4 (4th Cir. Mar. 2, 2000). Here, both parties appear to have signed the franchise agreements, which specify that "[t]he signature of an individual or individuals . . . constitutes their personal . . . agreement" to such terms, "**including but not limited to, the application of Virginia law** . . . ." ECF No. 1-5 ¶ 21, ECF No. 1-6 ¶ 21, ECF No. 1-7 ¶ 21 (emphasis in originals).

"[T]o avoid the operation of a choice-of-law provision . . . the party resisting the clause must establish by clear and convincing evidence that the clause itself, as opposed to the contract as a whole, was the product of impropriety," such as overreaching or fraud. *Zaklit v. Global Linguist Sol., LLC*, 2014 WL 3109804, at *7 (E.D. Va. July 8, 2014) (citing *Ash–Will Farms v.*

---

[6] Unlike counts one, three, and four, which are predicated on diversity jurisdiction, Liberty's claim of trademark infringement in count two is governed by federal law, *see* 15 U.S.C. §§ 1114, 1125, and need not be addressed with respect to the choice-of-law provisions.

*L.L.C. v. Leachman Cattle Co.*, Nos. 02–195, 02–200, 2003 WL 22330103, at *3 (Va. Cir. Ct. Feb. 13, 2003); *Global One Commc'n, L.L.C. v. Ansaldi*, No. C165948, 2000 WL 1210511, at *2 (Va. Cir. Ct. May 5, 2000) ("Virginia does not presume the unenforceability of contracts entered into by parties of unequal bargaining power but rather presumes contracts to be valid, and the burden is on the party challenging the validity to establish that the provision in question is unfair, unreasonable, or affected by fraud or unequal bargaining power.")). Although Hines generally argues that his franchise agreements with Liberty are invalid due to a lack of consideration and/or should be invalidated on grounds of unconscionability, Def.'s Mot. 6-7, such arguments are insufficient to establish clear and convincing evidence of fraud or overreaching by Liberty with respect to the choice-of-law provisions at issue.[7] This is particularly so here, as discussed above, where the dispute between the parties has a genuine connection to Virginia. In similar fashion, Hines also asserts that he "had not read [the franchise agreement], in its entirety, until, now, that he [must] defend himself from it." Def.'s Mot. 11. This, too, fails to provide a basis for the Court to ignore or set aside the applicable choice-of-law provisions when assessing Hines' venue challenge. Because Hines has failed to show fraud or overreaching by Liberty with respect to such provisions at this preliminary phase of the case, the Court finds that Virginia law

---

[7] To be valid under Virginia law, a contract requires proof of "an offer, acceptance, and consideration." *Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 196 (4th Cir. 2014) (citing *Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928 (Va. 1991)). Although the issue is not yet before the Court, an offer and acceptance may be established by proof that a contract was signed or it may be "inferred from the acts and conduct of the parties." *Durham v. Nat'l Pool Equip. Co.*, 138 S.E.2d 55, 58 (Va. 1964). With respect to consideration, Virginia follows "the 'peppercorn' theory of consideration, under which even a peppercorn suffices as consideration." *Sfreddo v. Sfreddo*, 720 S.E.2d 145, 153 (Va. Ct. App. 2012) ("A peppercorn has been equated with a cent.").

will likely be applied to resolving counts one, three, and four and this weighs in favor of maintaining venue in this district.[8]

Nor do the remaining, applicable interest of justice factors weigh in favor of a transfer to the District of Maryland. With respect to docket conditions and/or congestion, statistics from 2015 and 2016 show a comparable number of civil case filings in the District of Maryland (5,117 cases) and the Eastern District of Virginia (4,841). *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2016), at http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/03/31-3 (table entitled "Comparison of Districts Within the Fourth Circuit – 12 Month Period Ending March 31, 2016"). The median time from filing to trial of civil cases, however, for the Eastern District of Virginia is 10.8 months compared to 28.0 months in the District of Maryland. *Id.* Docket conditions, therefore, do not warrant a change in venue. Nor is there any reason to believe that Hines will receive anything other than a full and fair opportunity to litigate and defend the case in this district.

In conclusion, having given due consideration to the interest of justice and the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404, the Court finds that such factors fail to support the transfer of this matter to the District of Maryland.

## IV. RECOMMENDATION

For the reasons stated above, the Court **RECOMMENDS** that Hines' motion for a change of venue (ECF No. 14) be **DENIED**.

---

[8] Moreover, assuming for the sake of argument that Maryland law applied to such claims, no reason exists to believe that this Court could not discern and apply the appropriate substantive law of another state, in a case where analysis of other section 1404 factors supported retaining venue in this district. *See Intranexus, Inc.*, 227 F. Supp. 2d at 585 (noting that "[t]he nature of federal practice requires the Court to routinely interpret laws from jurisdictions across the nation").

## V. <u>REVIEW PROCEDURE</u>

By copy of this report and recommendation, the parties are notified that, pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of service of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

                                                                                                          /s/
                                                    Robert J. Krask
                                    United States Magistrate Judge

Norfolk, Virginia
July 26, 2016