**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

JTH TAX, INC., d/b/a
LIBERTY TAX SERVICE,

        Plaintiff,

v.                                                                             Action No. 2:15cv558

CHARLES HINES,

        Defendant.

**UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

By order of reference dated May 12, 2016 (ECF No. 26), this case was referred to the undersigned United States Magistrate Judge for a report and recommendation on defendant Charles Hines' motion to dismiss (ECF No. 15), pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, the Court **RECOMMENDS** that defendant's motion to dismiss be **DENIED**.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On December 23, 2015, plaintiff JTH Tax, Inc., d/b/a Liberty Tax Service ("Liberty"), filed a four-count complaint against defendant Charles Hines ("Hines"). Compl., ECF No. 1. The complaint alleges that Hines breached certain franchise agreements with Liberty by failing to comply with his post-termination obligations (count one) and failing to make required royalty and advertising payments to Liberty (count three), infringed Liberty's trademarks (count two),

and breached certain promissory notes by failing to make the required payments of principal and interest due (count four).  Compl. ¶¶ 31–49.

The complaint alleges the following facts, among others. Liberty is a Delaware corporation and its principal place of business is located at its headquarters in Virginia Beach, Virginia.  Compl. ¶ 1.  Hines resides in the state of Maryland.  Compl. ¶ 2.  Liberty is in the business of selling franchises, operating throughout the United States, engaged in the preparation of tax returns.  Compl. ¶ 2.  Liberty owns certain federally registered trademarks, which it authorizes franchisees to use in the course of their business operations.  Compl. ¶¶ 8, 36–37.  In 2012, Hines signed three separate franchise agreements with Liberty to establish and operate tax service franchises within three specified territories located in Maryland.  Compl. ¶¶ 9–11.  In conjunction with the purchase and operation of his tax franchises, Hines traveled to Virginia Beach to attend training classes and regularly submitted reports to and communicated with persons located at Liberty's Virginia Beach headquarters.  Compl. ¶ 3a.

On the date Hines entered into the latter two franchise agreements, he also executed two promissory notes payable to Liberty, each in the amount of $32,000.00.  Compl. ¶ 26.  Further, as part of each franchise agreement, Hines agreed to pay a monthly advertising fee to Liberty, at a rate of five percent of a franchise's monthly gross receipts, as well as a royalty payment totaling fourteen percent of a franchise's gross receipts, subject to certain specified minimum royalty payments.  Compl. ¶¶ 23–24.  Due to Hines' alleged failure to make such payments, the complaint alleges that he not only owes Liberty $60,460.66 in past due royalty and advertising payments, but also the outstanding principal balances of $25,600.00 and $29,496.33, respectively, due on each promissory note, along with unpaid interest.  Compl. ¶¶ 25–26.

In response to these and other alleged breaches, Liberty terminated Hines' franchise rights on June 3, 2015. Compl. ¶ 12. Pursuant to the franchise agreements, following termination, Hines was required, among other things, to remove all Liberty signs from his premises, cease identifying himself as a Liberty franchisee, pay all outstanding sums due to Liberty, transfer customers lists and files to Liberty, and adhere to covenants not to compete or solicit certain prior customers for business. Compl. ¶¶ 13–14. Hines reportedly failed to comply with such terms and covenants. Compl. ¶ 15. Notwithstanding that in August and November 2015, Liberty sent cease and desist letters demanding the return of customer files and compliance with non-compete and other clauses, Hines allegedly retained customer files and continued to engage in the tax preparation business from an office located in Baltimore, Maryland, which continues to use Liberty signs and trademarks. Compl. ¶¶ 17–21.

*Pro se* defendant Hines has filed two motions with the Court, one to dismiss the case under Rule 12 of the Federal Rules of Civil Procedure, and one for change of venue (ECF Nos. 14–15). Liberty has filed memoranda in opposition to each motion (ECF Nos. 17–18), and Hines replied thereto. (ECF Nos. 24, 27). The motion to dismiss is now ripe for consideration.[1]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss claims or complaints containing claims upon which no relief can be granted. *Sonnier v. Diamond Healthcare Corp.*, 114 F. Supp. 3d 349, 354 (E.D. Va. 2015). In order to survive a motion to dismiss, the complaint must contain enough factual details to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when it contains sufficient factual content that enables the court to draw a "reasonable inference" that the

---

[1] The defendant's motion for change of venue will be addressed in a separate report and recommendation.

3

defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ascertaining whether a complaint states a plausible claim for relief is a context-specific task that requires the court to rely on its judicial expertise. *Id*. at 662. However, the court need not accept legal conclusions or unwarranted arguments that the plaintiff represents as factual allegations. *Jones v. Imaginary Images, Inc.*, No. 3:12-CV-217, 2012 U.S. Dist. LEXIS 111682, at *14 (E.D. Va. Aug. 8, 2012).

Motions to dismiss do not assess factual disputes, but rather investigate a pleading's sufficiency. *Id.* "Factual challenges are not permitted under Rule 12(b)(6), and the Court may only consider the facts alleged in the complaint, any documents attached as exhibits thereto (or incorporated therein), and matters subject to judicial notice in weighing the merits of the motion." *Carswell v. Air Line Pilots Ass'n, Int'l*, 540 F. Supp. 2d 107, 114 (D.D.C. 2008).

### III. ANALYSIS

Hines' motion to dismiss does not specify under which provision of Rule 12(b) of the Federal Rules of Civil Procedure he seeks to dismiss the case. *See* Def.'s Mot. to Dismiss, ECF No. 15; Def.'s Reply to Pl.'s Mem. in Opp'n, ECF No. 24. Liberty assumes that Hines moves to dismiss under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Pl.'s Mem. in Opp'n 1, ECF No. 17. Documents filed *pro se* are to be liberally construed, and thus, the Court will construe Hines' motion as moving for dismissal under Rule 12(b)(6). *Dozier v. Skalsky*, No. 3:09-CV-15, 2009 U.S. Dist. LEXIS 36149, at *13 (E.D. Va. Apr. 28, 2009).

In addressing Hines' motion to dismiss, the Court **FINDS** that Liberty's complaint sufficiently states claims upon which relief could be granted. Liberty sufficiently claims Hines breached the franchise agreements when he allegedly failed to comply with post-termination obligations (count one) and failed to make royalty and advertising payments (count three). Compl. ¶¶ 16–25. Liberty also sufficiently alleges Hines breached the promissory notes (count

four) by allegedly failing to repay the outstanding balances. Compl. ¶¶ 26–30. Further, Liberty sufficiently alleges Hines infringed on Liberty's trademarks (count two). Compl. ¶¶ 35–41.

A. **Breach of Contract: Franchise Agreements and Promissory Notes**

Liberty sufficiently states three separate causes of action for breach of contract. Liberty's breach of contract claims are based on allegations that: (1) Hines failed to perform several obligations required by the franchise agreements (count one); (2) Hines failed to pay the royalty and advertising fees (count three); and (3) Hines failed to repay the promissory notes (count four). Compl. ¶¶ 16–30.

To sufficiently state a cause of action for a breach of contract, one must describe with particularity in the complaint: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 154 (Va. 2009) (citing *Filak v. George,* 594 S.E.2d 610, 614 (Va. 2004)).

1. **Existence of Contracts**

Liberty sufficiently alleges the existence of the franchise agreements and promissory notes. "A contract is a promise or set of promises for the breach of which the law gives a remedy for, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts § 1 (Am. Law Inst. 2016). The basic elements of a contract are offer, acceptance of the offer, and consideration exchanged between parties. *Sfreddo v. Sfreddo*, 720 S.E.2d 145, 154 (Va. Ct. App. 2012). Further, one must provide sufficient factual information in the complaint alleging the existence of these elements in order to state a claim for a breach of contract. *Bell Atl. Corp.,* 550 U.S. at 590 (explaining that one's pleading must include enough information to sufficiently state a cause of action). Simply alleging that parties

entered into a contract is insufficient to state a claim for relief. *See id*.

Liberty alleges specific facts establishing the existence of the franchise agreements. First, Liberty alleges it entered into three franchise agreements with Hines to operate three Liberty Tax franchises for the territories known as MD090, MD014, and MD117 in exchange for financial compensation. Compl. ¶¶ 9–11. In support of this claim, Liberty cites numerous terms of the alleged agreements, which include paying any amounts owed to Liberty, removing all Liberty signage once the agreements are terminated, and adhering to post-termination covenants to not compete or solicit business. Compl. ¶¶ 13–15. As further evidence of the existence of the franchise agreements, Liberty attached to the complaint copies of the alleged franchise agreements, which purport to be signed by Hines. Compl. ¶¶ 9–11; Compl. Ex. 5–7. Accordingly, Liberty sufficiently alleges the existence of the franchise agreements. *See Daggett & Grigg, Architects, P.C. v. Daggett*, 90 Va. Cir. 442, 444-46 (Va. Cir. Ct. 2015) (holding that an architectural firm sufficiently alleged the existence of a contract when it described specific stipulations of the alleged contract and attached the alleged contract to the complaint).

Further, Liberty alleges specific facts establishing the existence of two promissory notes. Compl. ¶ 26. First, Liberty alleges that Hines executed two separate promissory notes, each for $32,000, on August 7, 2012, in order to finance his franchise operations. Compl. ¶ 26. Also, Liberty claims that Hines owes Liberty $61,465.56 as a result of the alleged breach of promissory notes. In support of this claim, Liberty attached to the complaint copies of two alleged promissory notes, which purport to be signed by Hines. Compl. ¶ 26; Compl. Ex. 12–13. Thus, Liberty sufficiently alleges the existence of the promissory notes. *See Daggett & Grigg, Architects, P.C.,* 90 Va. Cir. at 446.

## 2.    Failure to Perform Contractual Obligations

Liberty sufficiently claims that Hines failed to adhere to the required terms of the franchise agreements and the promissory notes. Under Virginia law, a breach of contract occurs if a party fails to perform an obligation in a timely manner or exceeds a term of the contract. Va. Code Ann. § 59.1–507.1 (West 2001).

Liberty claims that Hines failed to perform several contractual obligations outlined in the franchise agreements. Compl. ¶¶ 16–25. Liberty contends, among other allegations, that Hines failed to pay amounts owed to Liberty, failed to remove all Liberty signage once the agreements were terminated, and failed to adhere to post-termination covenants to not compete or solicit business. Compl. ¶¶ 13–15. Liberty also claims Hines failed to pay the royalty and advertising fees. Compl. ¶¶ 43–45. These allegations sufficiently state that Hines failed to perform his contractual obligations. *See Squire v. Virginia Hous. Dev. Auth.*, 758 S.E.2d 55, 61 (Va. 2014) (holding that an administratrix sufficiently claimed breach of contract against the housing development authority when she claimed the housing authority failed to adhere to a specific requirement of the alleged contract).

Also, Liberty alleges that Hines failed to comply with the requirements of the promissory notes. Compl. ¶¶ 26–30. Specifically, Liberty asserts that Hines initially agreed to repay the two promissory notes, but Liberty claims he has failed to pay the sums due pursuant to such notes. Compl. ¶¶ 46–48. These specific allegations support Liberty's claim that Hines breached terms of the promissory notes. *See Squire,* 758 S.E.2d at 61.

## 3.    Damages as a Result of the Breach

Liberty sufficiently pleads damages caused by Hines' alleged failure to adhere to the terms of the franchise agreements and promissory notes. The plaintiff has the burden to plead

damages with reasonable certainty. *Nichols Constr. Corp. v. Virginia Mach. Tool Co., LLC,* 661 S.E.2d 467, 472 (Va. 2008). Damages cannot be recovered if they are derived from "uncertainties, contingencies, or speculation." *Suntrust Bank v. Farrar*, 675 S.E.2d 187, 191 (Va. 2009); *Shepherd v. Davis,* 574 S.E.2d 514, 524 (Va. 2003). Proof of damages is a vital element to a breach of contract claim, and failure to demonstrate such element justifies dismissal of the claim. *Filak,* 594 S.E.2d at 614–15.

Liberty pleads specific damages caused by Hines' alleged failure to adhere to terms of the franchise agreements. First, Liberty seeks $60,460.66 in damages for unpaid royalty and advertising fees. Compl. ¶¶ 43-45. Additionally, Liberty requests an immediate injunction involving numerous contractual obligations, including that Hines stop identifying himself as a Liberty franchisee and deliver all customer files and tax returns to Liberty. Compl. 9. Liberty also seeks an injunction to prevent Hines from divulging any information concerning customers served by the Hines' franchises. Compl. 10. Liberty claims an injunctive order is necessary to avoid further irreparable harm to the company. Compl. ¶ 34; *See Lone Star Steakhouse & Saloon v. Alpha of Virginia*, 43 F.3d 922, 939 (4th Cir. 1995) (emphasizing that irreparable injury frequently follows trademark infringement). Liberty sufficiently pleads damages allegedly resulting from Hines' breach of the franchise agreements. *See Neurology Serv., Inc. v. Fairfax Med. PWH, LLC*, 67 Va. Cir. 1, 4 (Va. Cir. Ct. 2005) (holding that a medical company sufficiently pled damages by explaining it suffered $1,000,000 in damages due to an alleged breach of contract that caused the company to lose grants, equipment, and patients).

Additionally, Liberty pleads specific damages resulting from Hines' alleged breach of the promissory notes. Compl. ¶¶ 46–48. Liberty seeks damages of $61,465.56, which it claims is the amount still owing on the two promissory notes. Compl. ¶¶ 46–48. Further, Liberty seeks

damages to cover the costs of enforcing the terms of the promissory notes and attorneys' fees. Compl. 11. Thus, Liberty sufficiently pleads damages as a result of Hines' alleged breach of the promissory notes. *See Neurology Serv., Inc.,* 67 Va. Cir. at 4.

For these reasons, counts one, three, and four sufficiently state claims upon which relief may be granted.

## B.     Trademark Infringement

Liberty sufficiently states a cause of action for trademark infringement in count two. Liberty's claim for trademark infringement is based on allegations that Hines continues to use Liberty trademarks despite maintaining no legal rights to use such marks. Compl. ¶¶ 35–37.

A plaintiff stating a cause of action for trademark infringement must show "(1) it possesses a mark; (2) the defendant used the mark; (3) the defendant used the mark 'in commerce'; (4) the defendant used the mark in connection with the sale, offering of sale, distribution or advertising of goods or services; and (5) the defendant used the mark in a manner to likely confuse consumers." 15 U.S.C. §§ 1114, 1125(a) (2012); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001); *Lone Star Steakhouse & Saloon,* 43 F.3d at 930.

### 1.     Trademark Possession

Liberty sufficiently claims to possess several Liberty Tax Service trademarks that are pertinent to its claim of trademark infringement. To sufficiently state a claim for trademark infringement, a plaintiff must show it owns a valid and protectable trademark. 15 U.S.C. § 1114(1)(a); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). To qualify as a trademark, there needs to be an "actual adoption and use of the symbol as a mark by a manufacturer or seller of goods or services." *George & Co., LLC v. Imagination Entm't*

*Ltd.*, No. 1:07cv498, 2008 WL 2883771, at *9 (E.D. Va. July 25, 2008).

Liberty claims to own valid and protectable trademarks. In support of its assertions, Liberty attached documents purportedly showing that the trademarks are registered with the Patent and Trademark Office and owned by Liberty. Compl. Ex. 1–4. First, Liberty claims to own the "Liberty Tax Service" trademark. LIBERTY TAX SERVICE, Registration No. 2,314,991; *See* Compl. Ex. 1. Second, Liberty claims to own the "Liberty Tax" trademark. LIBERTY TAX, Registration No. 2,465,670; *See* Compl. Ex. 2. Third, Liberty claims to own the "Liberty Tax Service" design. LIBERTY TAX SERVICE DESIGN, Registration No. 2,479,692; *See* Compl. Ex. 3. Further, Liberty claims to own the Statue of Liberty trademark. STATUE OF LIBERTY DESIGN, Registration No. 3,738,741; *See* Compl. Ex. 4. Assuming these facts to be true, Liberty sufficiently alleges the ownership of valid and protectable trademarks. *See America Online, Inc. v. AT & T Corp.,* 243 F.3d 812, 817–19 (4th Cir. 2001) (holding that a trademark registered with the Patent and Trademark Office serves as *prima facie* evidence that the mark is valid and protectable).

### 2. Use of Trademarks, Use of Trademarks in Commerce, and Use of Trademarks in Connection with the Sale or Distribution of Goods or Services

Liberty sufficiently claims that Hines uses Liberty trademarks, that this use is "in commerce," and that this use is "in connection with the sale or distribution of goods or services." "In commerce" refers to the use of a mark in the ordinary course of trade. 15 U.S.C. § 1127 (2012). Marks used or displayed in the sale of services are rendered "in commerce." 15 U.S.C. § 1127. Courts have interpreted "in commerce" to mean any use that can be regulated by Congress through the Commerce Clause. *Int'l Bancorp, LLC v. Societe des Baines de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003); *United We Stand America, Inc. v. United We Stand, America NY, Inc.,* 128 F.3d 86, 92–93 (2d Cir. 1997).

Further, any individual who, in connection with any goods or services, uses any word or symbol to misrepresent the origin or affiliation of one's products may be liable for actions of trademark infringement. 15 U.S.C. § 1125(a)(1). Courts broadly interpret "in connection with the sale or distribution of goods or services" and frequently find that even non-commercial activities satisfy this requirement. *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005); *United We Stand America, Inc.*, 128 F.3d at 90.

Liberty alleges that Hines displays the "Liberty Tax" signage on the office located at 2701 Port Covington, Baltimore, Maryland 21230, and that Hines continues to offer tax preparation services at that office. Compl. ¶¶ 18–19; Compl. Ex. 10. Assuming these facts to be true, Liberty sufficiently claims that Hines uses the Liberty trademarks, that this use is "in commerce," and that this use is "in connection with the sale or distribution of goods or services." *See Gov't Emps Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 703–04 (E.D. Va. 2004) (holding that an internet company used a business's trademarks "in commerce" because the internet company used the marks to advertise its own services); *Carter v. Commonwealth*, No. 0177–13–1, 2014 WL 1910356, *1–2 (Va. Ct. App. May 13, 2014) (ruling that a retail store owner's actions were in connection with the sale of goods when he sold sports jerseys under the guise of Reebok trademarks).

### 3. Use of Trademark Creates a Likelihood of Confusion

Liberty alleges sufficient facts to allow the Court to presume that a likelihood of confusion exists from Hines' use of the Liberty trademarks. A likelihood of confusion exists if the defendant's actual use of the trademark is likely to cause confusion in the minds of consumers regarding the origin of the goods and services. *George & Co., LLC,* 575 F.3d at 393; *CareFirst of Maryland, Inc., v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006). Actual

confusion is unnecessary. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). To determine if a likelihood of confusion exists, courts consider various factors, including the strength or distinctiveness of the mark, the similarity of the marks, the similarity of the goods or services the marks identify, the similarity of the facilities the two parties use in their businesses, the similarity of the advertising between the two parties, the defendant's intent, and whether actual confusion exists. *Pizzeria Uno Corp.,* 747 F.2d at 1527 (citing *Sun-Fun Prod. v. Suntan Research & Dev.*, 656 F.2d 186, 189 (5th Cir. 1981)).

Liberty sufficiently alleges that Hines' use of the Liberty trademarks creates a likelihood of confusion for consumers. First, Liberty refers to the language of the franchise agreements that claims an unauthorized use of Liberty trademarks will likely confuse customers. Compl. ¶ 13b. Further, Liberty alleges that Hines intentionally uses Liberty trademarks despite lacking the authority to do so. Compl. ¶¶ 36–37. Thus, it can be reasonably inferred Liberty alleges that Hine's use of the trademarks is likely confusing customers. Moreover, courts presume that a likelihood of confusion exists when one intentionally copies another's trademarks. *Osem Food Indus. Ltd. v. Sherwood Foods, Inc*. 917 F.2d 161, 165 (4th Cir. 1990); *see also Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc*., 281 F.2d 755, 758 (2d Cir. 1960) (explaining that the "second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer"). Therefore, assuming these facts to be true, Liberty sufficiently alleges that Hines' intentional use of the Liberty trademarks creates a likelihood of confusion for customers. *See Osem Food Indus. Ltd.,* 917 F.2d at 165.

## IV. <u>RECOMMENDATION</u>

Liberty's complaint sufficiently states claims upon which relief can be granted. Liberty alleges sufficient facts to state claims for multiple breaches of contracts. Additionally, Liberty

alleges sufficient facts to state a claim for trademark infringement. For the foregoing reasons, the Court **RECOMMENDS** that Hines' motion to dismiss, (ECF No. 15), be **DENIED**.

## V. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that, pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing report and recommendation within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the report and recommendation will result in waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

                                                                     /s/
                                                                  Robert J. Krask
                                                    United States Magistrate Judge

Norfolk, Virginia
July 26, 2016