## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

JTH TAX, INC.,
d/b/a Liberty Tax Service,

      Plaintiff,

v.                                     Action No. 2:15cv558

CHARLES HINES,

      Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on plaintiff JTH Tax, Inc., d/b/a Liberty Tax Service's ("Liberty") motion to dismiss or, in the alternative, stay *pro se* defendant, Charles Hines' ("Hines") second amended counterclaim pending arbitration, ECF No. 88. The motion was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 94. For the reasons that follow, the Court recommends that Liberty's motion to dismiss the second amended counterclaim be GRANTED in part and DENIED in part, and Liberty's motion to stay the counterclaim pending arbitration be GRANTED.

### I.  FACTUAL HISTORY

Liberty is a Delaware corporation and its principal place of business is located at its headquarters in Virginia Beach, Virginia. Second Amended Counterclaim ("SAC") ¶ 1, ECF No. 82 ; Compl. ¶ 1, ECF No. 1. Hines resides in the state of Maryland. SAC ¶ 2; Compl. ¶ 2.

Liberty is in the business of selling franchises engaged in the preparation of tax returns. SAC ¶ 4; Compl. ¶ 7. During 2012, Hines signed three, separate franchise agreements with Liberty to establish and operate tax service franchises within three, specified territories located in Maryland. SAC ¶¶ 5–9; Compl. ¶¶ 9–11; ECF Nos. 1-5, 1-6, 1-7. Attached to the end of each franchise agreement is a separately signed one-page "Maryland Addendum" that includes an arbitration clause. ECF No. 1-5 at 21; ECF Nos. 1-6, 1-7 at 23.

Hines operated a Liberty franchise office from 2012 through 2015, and a second from 2014 through 2015. SAC ¶¶ 5, 7. Hines also operated three Liberty kiosks located inside Walmart stores for four months in 2014. SAC ¶¶ 8–9. Hines' Liberty offices and kiosks were all located in Maryland. SAC ¶¶ 5, 7–9.

On June 3, 2015, Liberty "[a]bandoned Hines' Franchise Agreements and [t]erminated him, based on multiple breaches, including, advertising outside of his franchise territory, and failure to pay amounts owing." SAC ¶ 10; *see also* Compl. ¶ 12.

## II.  PROCEDURAL HISTORY

On December 23, 2015, Liberty filed this action against Hines seeking injunctive relief and damages for alleged breach of the franchise agreements, trademark infringement, past due accounts receivable, and breach of the promissory notes. ECF No. 1. Following extensions of time to file a responsive pleading, ECF Nos. 5, 10, 37; and denial of Hines' motion to dismiss and motion for change of venue, ECF No. 31, Hines submitted an answer on November 10, 2016, and corrected the defect with the answer on December 12, 2016, ECF Nos. 41, 45. Following the denial of Liberty's motion for default judgment, ECF No. 50; denial of Liberty's motion to dismiss and motion to strike, and Hines being granted leave to file an amended counterclaim, ECF No. 65; and the grant of Liberty's motion to dismiss the amended counterclaim without

2

prejudice to Hines filing a second amended counterclaim in an effort to comply with Rules 8(a)(2), 8(d)(1), and 10(b), ECF No. 80; Hines submitted a second amended counterclaim subject to defect on August 11, 2017. ECF No. 82. Hines alleges that Liberty breached the franchise agreements (Count I), committed fraud (Counts II and III), violated the Franchise Rule, 16 C.F.R. § 436.5(t)(6) (Count IV), and operated a failed system (Count V). *Id.* Hines also included other omnibus claims and general points (Count VI). *Id.* The second amended counterclaim was ordered filed on August 28, 2017, and Liberty was ordered to file a responsive pleading within 21 days. ECF No. 85.[1]

On September 18, 2017, Liberty filed a motion to dismiss Hines' second amended counterclaim or, in the alternative, stay the counterclaim pending arbitration. ECF No. 88. Hines filed an "initial response and memorandum" in opposition to Liberty's motion to dismiss on September 28, 2017. ECF No. 92. On October 6, 2017, the Court denied Hines' motion to stay or pause the case for 14 days to allow Hines to file an additional opposition to Liberty's motion to dismiss. ECF No. 96.

On October 10, 2017, Liberty filed a motion for leave to file a reply brief, which was submitted on October 9, 2017, after the deadline of October 5, 2017. ECF Nos. 97, 98. Hines submitted an additional opposition to Liberty's motion to dismiss on October 12, 2017. ECF No. 101. The additional opposition was filed subject to defect due to Hines failing to obtain leave of Court to so file. ECF No. 101. Due to the failure to comply with Local Civil Rule 7(F)(1) in filing the memoranda, the Court has not relied upon any information provided in

---

[1] Hines filed a motion for leave to file a third amended counterclaim on September 13, 2017, ECF No. 87, which was denied on September 20, 2017 due to Hines' failure to attached the proposed third amended counterclaim. ECF No. 91.

Liberty's reply or Hines' additional opposition.[2]   Liberty's motion for leave to file a reply brief after the deadline, ECF No. 98, is DENIED.

### III.   CHOICE OF LAW

The franchise agreements, which form the basis of Hines' relationship with Liberty, each contain a choice of law provision dictating that Virginia law controls any claims arising under or relating to such agreements.   ECF Nos. 1-5, 1-6, 1-7 at 16.   Paragraph 15(a) of the franchise agreements states:

> This Agreement is effective upon its acceptance in Virginia by our authorized officer.   Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto.   However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is outside Virginia.

*Id.*

While Hines does not specifically attack the choice of law provision, he continues to insist that the correct venue for the case is Maryland, his residence and the location of the franchises at issue.   SAC ¶ 3.[3]   Hines also alleges Liberty has violated both Virginia and Maryland consumer protection acts and franchise protection acts.[4]   SAC ¶¶ 74–75.

Prior to addressing Liberty's motion to dismiss, the Court must determine the applicable law.   "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances."   *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270,

---

[2] Nothing contained in either of these filings would change the recommendations made in this report and recommendation.

[3] Hines' motion for change of venue was previously denied.   ECF No. 31.

[4] The correct names for the franchise acts Hines is presumably referring to are the Virginia Retail Franchising Act, Va. Code Ann. § 13.1-559 (2009), and the Maryland Franchise Registration and Disclosure Law, Md. Code Ann., Bus. Reg. § 14-227(e).

275 (4th Cir. 2007) (quoting *Hitachi Credit Am. Corp. v. Signet Bank,* 166 F.3d 614, 624 (4th Cir. 1999)); *see also Artistic Stone Crafters v. Safeco Ins. Co.*, 726 F. Supp. 2d 595, 600–01 (E.D. Va. 2010) (citing *Colgan*, 507 F.3d at 275, and adhering to choice of law clause); *Hooper v. Musolino,* 364 S.E.2d 207, 211 (Va. 1988) (applying the choice of law provision providing for the application of North Carolina law because the state "was reasonably related to the purpose of the agreement").

"[T]o avoid the operation of a choice-of-law provision . . . the party resisting the clause must establish by clear and convincing evidence that the clause itself, as opposed to the contract as a whole, was the product of impropriety," such as overreaching or fraud. *Zaklit v. Global Linguist Sol., LLC*, No. 1:14cv314, 2014 WL 3109804, at *7 (E.D. Va. July 8, 2014) (citing *Ash–Will Farms v. L.L.C. v. Leachman Cattle Co.*, Nos. 02–195, 02–200, 2003 WL 22330103, at *3 (Va. Cir. Ct. Feb. 13, 2003); *Global One Commc'n, L.L.C. v. Ansaldi*, No. C165948, 2000 WL 1210511, at *2 (Va. Cir. Ct. May 5, 2000) ("Virginia does not presume the unenforceability of contracts entered into by parties of unequal bargaining power but rather presumes contracts to be valid, and the burden is on the party challenging the validity to establish that the provision in question is unfair, unreasonable, or affected by fraud or unequal bargaining power.")). Although Hines generally argues that his franchise agreements with Liberty are invalid due to a lack of consideration, SAC ¶¶ 19, 22, 47, 76, 77, 102, 110, and should be invalidated on grounds of unconscionability, SAC ¶¶ 22–26, 41–46, 60, such arguments are insufficient to establish clear and convincing evidence of fraud or overreaching by Liberty with respect to the choice-of-law provision at issue. *Zaklit*, No. 1:14cv314, 2014 WL 3109804, at *8. This is particularly so here,

where the dispute between the parties has a genuine connection to Virginia.[5]   Because Hines has failed to show fraud or overreaching by Liberty with respect to the choice-of-law provision, the Court finds that Virginia law applies to the breach of contract claims raised in Hines' second amended counterclaim.

"Where a choice of law clause in the contract is sufficiently broad to encompass contract-related tort claims," courts will apply the choice of law provision to related non-contract claims. *Hitachi Credit Am. Corp.*, 166 F.3d at 628; *see also Zaklit*, No. 1:14cv314, 2014 WL 3109804, at *9–11.   The choice of law provision in the franchise agreements at issue here was intended to have a broad scope, providing that Virginia law applies to "all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto," with the exception of the Virginia Retail Franchising Act.   ECF Nos. 1-5, 1-6, 1-7 at 16.   Accordingly, Virginia law applies to Hines' related non-contract claims.

The only portions of Hines' second amended counterclaim not governed by Virginia law are his counts alleging violations of state statutes.   The franchise agreements provide that "the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is outside Virginia."   *Id.*   More importantly, the terms of the Virginia Retail Franchising Act provide that that Act applies "only to a franchise the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the Commonwealth of Virginia."   Va. Code Ann. § 13.1-559 (2009).   Moreover, the Maryland

---

[5] Liberty maintains its headquarters and principal place of business in Virginia, and the franchise agreements forming the basis of the parties' relationship specify that such agreements take effect "upon . . . acceptance in Virginia" by one of Liberty's authorized representatives.   ECF No. 1-5 ¶ 15a, ECF No. 1-6 ¶ 15a, ECF No. 1-7 ¶ 15a.   In addition, Hines traveled to Virginia Beach to attend training, and regularly submitted reports to and communicated with persons located at Liberty's Virginia Beach headquarters.   Compl. ¶ 3a.

Franchise Registration and Disclosure Law applies to the sale of a franchise where the franchise fee exceeds $100.00 and the franchisee is a resident of Maryland or the franchised business will be or is operated in Maryland.  Md. Code Ann., Bus. Reg. § 14-203(a) (1992).  The parties agree that Hines is a resident of Maryland, SAC ¶ 2; Compl. ¶ 2, and that the franchises at issue were located in Maryland, SAC ¶¶ 5–9; Compl. ¶¶ 9–11.  Therefore, the Maryland Franchise Registration and Disclosure Law applies to the transactions at issue, and will govern Hines' allegations of Liberty's violations of state statutes.

## IV.  STANDARD OF REVIEW FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss complaints, or claims within complaints, upon which no relief can be granted. Fed. R. Civ. P. 12(b)(6); *Sonnier v. Diamond Healthcare Corp.*, 114 F. Supp. 3d 349, 354 (E.D. Va. 2015).  In order to survive a motion to dismiss, a counterclaim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This pleading standard requires that the counterclaim state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In essence, "[a] claim has facial plausibility when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Ascertaining whether a counterclaim states a plausible claim for relief is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  *Id.* at 679.

A motion to dismiss pursuant to Rule 12(b)(6) challenges "the sufficiency of a [counterclaim]; it does not resolve disputes over factual issues, the merits of a claim, or the applicability of a defense." *SunTrust Mortg., Inc. v. Simmons First Nat'l Bank*, 861 F. Supp. 2d

733, 735 (E.D. Va. 2012) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  Therefore, "[i]n ruling on a 12(b)(6) motion, a court 'must accept as true all of the factual allegations contained in the [counterclaim]' and 'draw all reasonable inferences in favor of the [counter-claimant].'"  *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).  The factual allegations, however, "cannot be mere speculation, and must amount to more than 'a sheer possibility that a [party] has acted unlawfully.'"  *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 747 (E.D. Va. 2016) (quoting *Iqbal*, 556 U.S. at 678).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . [n]or does a [counterclaim] suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Iqbal*, 446 U.S. at 678 (internal quotations omitted); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).  However, courts do construe *pro se* complaints liberally.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

Apart from the general pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure, Rule 9 sets forth pleading requirements for "special matters." Fed. R. Civ. P. 9. Subsection (b) of Rule 9, which establishes the pleading requirements for "fraud or mistake" provides that:

> (b) In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).  Under Rule 9(b), the circumstances that must be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person

8

making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999) (citation and internal quotation marks omitted). A plaintiff's failure to plead fraud with particularity under Rule 9(b)'s pleading requirements "is treated as a failure to state a claim under Rule 12(b)(6)." *Id.* at 783 n.5.

## V. ANALYSIS

The Court will first address Liberty's motion to dismiss Counts I though VI of Hines' second amended counterclaim, and then will address Liberty's motion to stay the counterclaims pending arbitration.

### A.    Motion to Dismiss the Second Amended Counterclaim

#### 1.    Count I—Breach of the Franchise Agreements

In Count I, Hines alleges Liberty breached the franchise agreements by:  (a) violating the Franchise Rule provision in the Federal Trade Commission Act, 16 C.F.R. § 436.5(t)(6) (SAC ¶¶ 13–14, 16, 19); (b) failing to generate enough customers through their brand to allow Hines to comply with the franchise agreements (SAC ¶¶13, 16); (c) failing to provide consideration for the $40,000.00 franchise fee and royalties (SAC ¶ 19); and (d) breaching the implied covenant of good faith and fair dealing (SAC ¶¶ 16, 20).

Under Virginia law, to establish a breach of contract, Hines must demonstrate:  (1) a legally enforceable obligation of Liberty to Hines; (2) Liberty's violation or breach of that obligation; and (3) injury or damage to Hines caused by Liberty's breach of the obligation. *Sunrise Continuing Care, LLC v. Wright,* 671 S.E.2d 132, 135 (Va. 2009) (citing *Filak v. George,* 594 S.E.2d 610, 614 (Va. 2004)).

### a.     The Franchise Rule

Although first raised in Count I, Hines references 16 C.F.R. § 436.5, or "the Franchise Rule," throughout his second amended counterclaim.  SAC ¶¶ 13–14, 16, 19, 68–72, 87, 109, 111–12, 136(a).   In Count I, Hines alleges that Liberty violated this rule when it failed to cite the Franchise Rule in the franchise agreements, and failed to notify Hines of his rights and of the fact that the territory he was purchasing had previously failed as a Liberty franchise.   SAC ¶¶ 14, 19.  Hines alleges that he would not have purchased a Liberty franchise if he had been provided with this information.   SAC ¶ 14.

In Count III, Hines alleges that Liberty violated the Franchise Rule by failing to include in the franchise disclosure document the identification of, and contact information for, the previous franchise owners of the territories Liberty was selling to Hines.   SAC ¶¶ 69–70.

In Count IV, Hines alleges Liberty violated the Franchise Rule, SAC ¶¶ 87, 109, 111–12, by reselling failed territories, which is the "foundation of income generation for Liberty Tax and John Hewitt," SAC ¶¶ 93–99.   Hines specifies that John Hewitt violated the Franchise Rule provision "willingly, purposefully, and by calculation."   SAC ¶ 87.

In Count VI, Hines cites the Franchise Rule in his list of omnibus and general points.  SAC ¶ 136(a).

In each of these counts, regardless of the heading under which the allegations fall, Hines is alleging that Liberty violated the Franchise Rule.   The District Court for the District of Columbia provides the following helpful explanation of the "Franchise Rule":

> The Federal Trade Commission ("FTC") has promulgated regulations titled "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," 16 C.F.R. § 436 (2013) (commonly known as the "Franchise Rule" *see* John Bourdeau, *et al.,* 62B Am. Jur. 2d Private Franchise

Contracts § 26 (2d ed. 2014)), which apply nationwide.   Before selling a franchise, the Franchise Rule requires a franchisor to provide a prospective franchisee with a detailed disclosure statement—known as a "uniform franchise offering circular" or a "franchise disclosure document"—that includes information like the franchisor's corporate history and current financial condition, the track record of any other franchises, and the background of the franchisor's principal officers. *See* 16 C.F.R. § 436.5; *see also FTC v. Jordan Ashley, Inc.,* No. 93–2257–CIV, 1994 WL 200775, at *3 (S.D. Fla. Apr. 5, 1994); Bourdeau, *supra,* § 26.   The disclosure requirements set forth in the Franchise Rule are "designed to protect prospective purchasers from the financial hardships that arise when they purchase franchises and other business opportunity ventures without essential, reliable information about them."   Bourdeau, *supra,* § 26.

*A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 70 F. Supp. 3d 376, 382 (D.D.C. 2014).

The Franchise Rule regulations invest the FTC with the authority to bring suit to enjoin a franchisor that fails to provide the disclosures required by the Franchise Rule.   *See FTC v. Sage Seminars, Inc.,* No. C95–2854, 1995 WL 798938, at *7 (N.D. Cal. Nov. 2, 1995);[6] John Boudreau, *et al.*, 62B Am. Jur. 2d Private Franchise Contracts § 26 (2d ed. 2014).   However, neither the FTC nor the Franchise Rule provide for franchisees to bring suit to enforce the regulations.   *See Yumilicious Franchise, L.L.C. v. Barrie*, No. 3:13cv4841, 2015 WL 2359504, at *3 (N.D. Tex. May 18, 2015), *aff'd*, 819 F.3d 170 (5th Cir. 2016) (holding "no private right of action is available to franchisees under these regulations"); *Bans Pasta, LLC v. Mirko Franchising, LLC*, No. 7:13cv360, 2014 WL 637762, at *12 (W.D. Va. Feb. 12, 2014) ("[N]either the FTC Act nor [16 CFR § 436.5] gives rise to a private cause of action, and numerous courts have so held."); *A Love of Food I*, 70 F. Supp. 3d at 382 ("no private right of action is available to

---

[6] "Pursuant to Section 18(d)3 of the FTC, 15 U.S.C. § 57a(d)(3), and 16 C.F.R. § 436.1, violations of the Franchise Rule constitute unfair or deceptive acts or practices in or affecting commerce, in contravention of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).   Such acts may therefore be enjoined under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b)."   *Sage Seminars*, No. C95–2854, 1995 WL 798938, at *7.

franchisees under" the Franchise Rule) (collecting cases); *Robinson v. Wingate Inns Int'l, Inc.,* No. 13cv2468, 2013 WL 6860723, at *2 (D.N.J. Dec. 20, 2013) ("It is well settled that there is no private cause of action for violation of the FTC franchise disclosure rules.") (citations omitted); *Vino 100, LLC v. Smoke on the Water, LLC,* 864 F. Supp. 2d 269, 281 (E.D. Pa. 2012) (same).

Accordingly, the portions of Hines' counterclaim that allege Liberty is liable for violations of the Franchise Rule, contained in Counts I, III, IV, and VI, should be DISMISSED with prejudice, because the Franchise Rule does not provide a private cause of action to franchisees.

### b.    Failure of the Liberty Brand to Generate Customers

Hines next alleges that Liberty breached the franchise agreements when it failed to "by brand, [] generate and provide enough Taxpayer volume [customers] for Hines" to satisfy his obligations under the agreement.  SAC ¶¶ 13, 16; *see also* SAC ¶¶ 98, 118.  Hines does not identify a provision in the franchise agreements that Liberty breached.  To allege that Liberty breached the franchise agreements, Hines "cannot rely upon conclusory statements but must identify which provisions [of the franchise agreements] imposed the purportedly breached obligation."  *Compel v. Citi Mortg. Inc.*, No. 1:04cv1377, 2005 WL 4904816, at *2 (E.D. Va. Feb. 23, 2005).

A review of the franchise agreements attached to the complaint reveals two paragraphs that reference the success of the franchise.  See ECF Nos. 1-5, 1-6, 1-7.  Paragraph 5 outlines "obligations of franchisor," and subpart c of that paragraph, titled "Site Selection," states in part, "[o]ur approval of the location of a site is not a guarantee of success in that location or a warranty

12

or assurance as to any aspect of the office or its location." *Id.* at 6.   Paragraph 20 is titled

"Acknowledgments," and states in part:

> Except as may be stated in Item 19[7] of our Franchise Disclosure Document, you
> acknowledge that no person is authorized to make and no person has made any
> representations to you as to the actual, projected or potential sales, volumes,
> revenues, profits or success of any Liberty Tax Service franchise.

*Id.* at 18.

Accordingly, Hines' allegation that Liberty breached the franchise agreements by failing to

provide customers should be DISMISSED without prejudice, because Hines has failed to specify

"a legally enforceable obligation of Liberty to Hines" to generate and provide enough customers

for Hines to satisfy his obligations under the agreement.

### c.   Liberty's Failure to Provide Consideration

Hines alleges throughout the second amended counterclaim that the franchise agreements

provide no consideration for the $40,000.00 franchise fee and 19% royalty that he agreed to pay.

SAC ¶¶ 19, 22, 47, 76, 77, 102, 110.

Under Virginia law, consideration represents "the price bargained for and paid for a

promise." *Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 197 (4th Cir. 2014) (quoting *Smith*

*v. Mountjoy*, 694 S.E.2d 598, 602 (Va. 2010)).   It can be "a benefit to the party promising or a

detriment to the party to whom the promise is made." *Id.* (quoting *GSHH–Richmond, Inc. v.*

*Imperial Assocs.*, 480 S.E.2d 482, 484 (Va. 1997)).   Further, "[p]roof of consideration is not a

high hurdle; rather, '[a] very slight advantage to the one party or a trifling inconvenience to the

---

[7] The Franchise Rule requires the franchisor to disclose twenty-three specified items in
the franchise disclosure document.   16 C.F.R. § 436.5 (2007).   Item 19 is titled "Financial
Performance Representations," and appears at subsection (s).   *Id.*

other is generally held sufficient to support the promise.'" *Id.* (quoting *Brewer v. First Nat'l Bank of Danville,* 120 S.E.2d 273, 279 (Va. 1961)).

While Hines does not believe he received sufficient consideration for the franchise fee and royalties paid to Liberty, the franchise agreements do outline several obligations of Liberty (the franchisor) that constitute consideration. *See* ECF Nos. 1-5, 1-6, 1-7 at 6–8. The franchise agreements state that Liberty is obligated to provide Hines with training, an operations manual, advertising and marketing, software, technical support, financial products, operational support, and financing, among others. *Id.* Allegations in Hines' counterclaim provide evidence that he did receive some consideration. He admits that he "operated as a Liberty Tax Franchisee in four calendar years and three tax seasons," or "thirty-seven months." *See* SAC ¶¶ 50, 55. Presumably, he was given some of the consideration listed above, such as, training, an operations manual, and software, in order to operate the franchises. As a result, Hines' allegation that the franchise agreements fail to provide any consideration in return for the franchise fee and royalties should be DISMISSED without prejudice.

### d.  Implied Covenant of Good Faith and Fair Dealing

Hines further alleges that Liberty breached the franchise agreements by breaching the implied covenant of good faith and fair dealing. SAC ¶¶ 16, 20, 121.

Contracts governed by Virginia law contain an implied covenant of good faith and fair dealing. *Va. Vermiculite, Ltd. v. W.R. Grace & Co.,* 156 F.3d 535, 541–42 (4th Cir. 1998). This implied duty exists regardless of whether the contracts fall under the Uniform Commercial Code. *See SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of North Carolina,* 806 F. Supp. 2d 872, 893–95 (E.D. Va. 2011), *vacated on other grounds*, 508 F. App'x 243 (4th Cir. 2013). This

14

duty prohibits the "exercise [of] contractual *discretion* in bad faith," but "does not prevent a party from exercising its explicit contractual *rights*," *Va. Vermiculite, Ltd.*, 156 F.3d at 542, and "cannot be used to override or modify explicit contractual terms." *Riggs Nat'l Bank v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994).

> [T]he implied covenant of good faith and fair dealing is 'simply a recognition of conditions inherent in expressed promises. To that end, the covenant does not compel a party to take affirmative action not otherwise required under the contract, does not establish independent duties not otherwise agreed upon by the parties, and cannot be invoked to undercut a party's express contractual rights.

*Johnson v. Countrywide Home Loans, Inc.*, No. 2:15cv513, 2016 WL 7042944, at *3 (E.D. Va. Jan. 26, 2016), *aff'd*, 669 F. App'x 117 (4th Cir. 2016) (quoting *Monton v. America's Servicing Co.*, No. 2:11cv678, 2012 WL 3596519, at *7 (E.D. Va. Aug. 20, 2012)). Further, "a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action." *Id.* (citing *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12cv617, 2013 WL 350527, at *6 (E.D. Va. Jan. 29, 2013), *aff'd*, 669 F. App'x 117 (4th Cir. 2016)).

Hines' allegation that Liberty breached the franchise agreements by breaching the implied covenant of good faith and fair dealing is vague. Hines alleges "Liberty Tax breached the Franchise Agreement" through "the failure to act in the manner of the Implied Covenant of Good Faith and Fair Dealings," and asks, "what part of the Covenant of Good Faith and Fair Dealings did I get out of this?" ¶¶ 16, 20. Hines fails to specify what contractual discretion Liberty exercised in bad faith. As with Hines' other breach of contract allegations, Hines has failed to identify the provision in the franchise agreements that gives Liberty contractual discretion, or specify how Liberty exercised that discretion in bad faith. The only substantive allegations of breach of contract in Count I—violation of the Franchise Rule, failing to provide a sufficient

15

customer base, and failing to provide consideration—do not state a claim for the reasons discussed above. These allegations similarly cannot state a claim for a breach of the implied covenant of good faith and fair dealing, as "the covenant does not compel a party to take affirmative action not otherwise required under the contract." *Johnson*, No. 2:15cv513, 2016 WL 7042944, at *3. Therefore, Hines' allegation that Liberty breached the contract by violating the implied covenant of good faith and fair dealing should be DISMISSED without prejudice.

### 2. Count II—"Fraud of the Franchise Agreement"

In Count II, Hines alleges that Liberty committed fraud by misrepresenting certain aspects of the franchises to induce him to purchase the franchises. Hines asserts that "[a] serious case and pattern of Fraud starts with Liberty even before one becomes a Franchisee. With Liberty, I believe Fraud starts with INTENTION, and is woven into the fabric of the Franchise Agreement, continues with the Franchise Disclosure Document (FDD), and is anchored and perpetrated in Liberty's day to day operational realities as espoused, carried through, and implemented by ubercomplicit butt kissers." SAC ¶ 38.

Hines then alleges the following misrepresentations:

41. At the "Open House" - a Franchise Prospect's first blush with Liberty Tax, John Hewitt supplied ambiguous, misleading, inaccurate, and - as time would tell - false verbal statements as to the actuality of success of Liberty Tax Franchisees.

42. Liberty Tax exaggerated many aspects of the Liberty Franchise in order to induce the Franchisee Prospects to purchase the franchise.

43. Liberty Tax LIED about many aspects of the Liberty Franchise in order to induce the Franchisee Prospects to purchase the franchise.

44. Liberty misrepresented Item 19 information to induce the Prospect to buy into Liberty Tax.

16

45.    In the Financial Disclosure Document (FDD), Liberty Tax provided inaccurate written statements as to the initial expenses pertaining to the operation of the franchise and to the potential profitability of the franchise.

. . .

51.    Liberty Tax and John Hewitt willingly, purposely, and pathetically LIED about many aspects of the Liberty Tax Walmart Kiosk "opportunity", so costly to the Liberty Franchisees, as the debacle "Walmart" turned out to be!

SAC ¶¶ 41–45, 51.[8]    Hines alleges that, as a result of Liberty's fraud, he "expended over '$300,000' and lost 'a quarter of a million dollars.'"    SAC ¶ 55.

The elements of fraud in Virginia are:  "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999) (citing *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994)).  Fraud in the inducement occurs when a false promise is given before a contract is entered into, in an effort to induce the promisee to enter the contract, and with the present intention of not fulfilling such promise. *See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 348 (Va. 1998); *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985) ("When he makes the promise, intending not to perform, his promise is a misrepresentation of *present* fact, and if made to induce the promisee to act to his detriment, is actionable as an actual fraud."); *Orbit Corp. v. Fedex Ground Package Sys., Inc.*, No. 2:14cv607, 2015 WL 12516611, at *1 (E.D. Va. Dec. 4, 2015).

---

[8] In Count II, Hines also alleges Liberty committed a fraud when it entered into the franchise agreements with Hines, a form contract that was not negotiated, that lacks consideration, and that strips the franchisee of rights, SAC ¶¶ 22–25, such as the right to retain his own customers, SAC ¶¶ 28–32.  The Court has addressed Hines' assertions regarding lack of consideration.  Hines' remaining arguments regarding the unequal bargaining power may be asserted as a defense to Liberty's breach of contract claim, but do not state a claim for relief.

Under Virginia law, however, a fraud claim cannot be based on a statement of opinion, rather,

> The mere expression of an opinion, however strong and positive the language may be, is no fraud.  Such statements are not fraudulent in law, because . . . they do not ordinarily deceive or mislead.  Statements which are vague and indefinite in their nature and terms, or are merely loose, conjectural or exaggerated, go for nothing, though they may not be true, for a man is not justified in placing reliance upon them.

*Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 781 (Va. 1996) (quoting *Saxby v. S. Land Co.*, 63 S.E. 423, 424 (Va. 1909)).   As a result, "'commendatory statements, trade talk, or puffing, do not constitute fraud because statements of this nature are generally regarded as mere expressions of opinion.'"  *Glaser v. Enzo Biochem, Inc.*, 126 F. App'x 593, 600 (4th Cir. 2005) (quoting *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717 (Va. 2001)).

While Hines has made conclusory allegations of fraud, he does not state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation" as required by Rule 9(b).   *See also Harrison*, 176 F.3d at 783–84.  In paragraph 41, Hines alleges that "[a]t the 'Open House,'" John Hewitt "supplied ambiguous, misleading, inaccurate, and . . . false statements as to the actuality of success of Liberty Tax Franchisees."   Hines has failed to provide the actual misrepresentation, but the allegation suggests that John Hewitt made a statement of opinion about the success of a franchise that is not actionable.   In paragraphs 42, 43, and 51, Hines asserts Liberty and John Hewitt exaggerated or lied about "many aspects of the Liberty Franchise," and "many aspects of the Liberty Tax Walmart Kiosk."   Hines has again failed to provide the actual misrepresentation (including any promise made with a present intention of not fulfilling the promise), and the time and place of the misrepresentation.   Further, in each of these paragraphs, Hines states that Liberty made the

18

misrepresentations, and in one paragraph identifies John Hewitt in addition to Liberty. Hines must specify the identity of the person who made each misrepresentation. Hines alleges in paragraphs 44 and 45 that Liberty misrepresented or provided inaccurate information in the financial disclosure document. Hines has not attached the financial disclosure document, or identified the specific misrepresentation made in the document.

Hines' fraud allegations should be DISMISSED without prejudice due to Hines' failure to state with particularity the misrepresentations made, as well as the circumstances surrounding any misrepresentation, as required under Rule 9(b).

### 3.   Count III—"Fraud as a 'Legitimate' Business"

In Count III, Hines alleges that, in a practice he refers to as "Fee Intercepts," Liberty diverted Hines' earned tax preparation fees, "without permission, to apply those fees against the Defendant[']s fees or accounts payable, due Liberty." [9] SAC ¶¶ 78–79. Hines also alleges in Count III that Liberty has violated the Maryland and Virginia consumer protection acts and franchise protection acts (SAC ¶¶ 74–75, 86).

#### a.   "Fee Intercepts"

Hines alleges that over three years, Liberty diverted approximately $23,000.00 of Hines' earnings (tax preparation fees), "without permission, to apply those fees against the Defendant[']s fees or accounts payable, due Liberty." SAC ¶¶ 78–79. Hines refers to this practice as "Fee Intercepts." *Id.* Hines asserts Liberty's practice of fee intercepts violates public policy, "amount[s] to an inequitable assertion of its powers and position," is unfair and deceptive, is unconscionable, and violates the standard guarantees of federal and state law. SAC ¶¶ 78, 82–86.

---

[9] Hines realleges in Count III that the franchise agreements lack consideration (SAC ¶¶ 76–77), and Liberty violated the Franchise Rule (SAC ¶¶ 68–72).

Hines alleges that "$16,809 of Fee Intercepts in the 2014 tax season put [Hines], the Defendant, 'out of business' in three of [his] five operations." SAC ¶ 81. While Hines may feel that this practice is unfair, Liberty is permitted to collect fees paid by Hines' customers and apply the fees to Hines' debt held by Liberty due to a provision in the franchise agreements that states:

> All of the tax preparation . . . fees, and any rebates that you receive from Financial Products or customers who purchase Financial Products, shall initially be paid to us. From these fees and any rebates, we will deduct monies that you owe to us and deduct and hold monies to apply to upcoming amounts due to us, and remit the balance to you.

ECF Nos. 1-5, 1-6, 1-7 at 6. By signing the franchise agreements, Hines agreed to Liberty applying customer fees to Hines' debt held by Liberty. Because the franchise agreements provide that Liberty can perform the specific acts complained of with respect to the "fee intercepts," Hines has failed to allege Liberty acted fraudulently, and this portion of Count III should be DISMISSED without prejudice.

### b. Virginia Retail Franchising Act and Consumer Protection Act

Next, Hines alleges Liberty violated the "Virginia Consumer Protection Act and Virginia Franchise Protection Act." SAC ¶ 75; *see also* SAC ¶¶ 86, 136(c). As discussed in the choice of law section above, the Virginia Retail Franchising Act does not apply to Hines' purchase of the Maryland franchise territories. The Virginia Retail Franchising Act applies "only to a franchise the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the Commonwealth of Virginia." Va. Code Ann. § 13.1-559 (2009). Further, the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq.*, does not apply to the sale of franchise territories. The act only applies to "consumer transactions," the sale of goods or services "to be used primarily for personal, family or household purposes," or the sale of a

20

"business opportunity" that enables a consumer to start a business "out of his residence." Va. Code. Ann. § 59.1-198 (2011). Hines operated Liberty franchises at two office locations in Maryland as well as from kiosks inside three Walmart stores in Maryland; but, did not attempt to start a business out of his residence.[10] SAC ¶¶ 5–9; Answer, ECF No. 41 at 41, 54–57. Therefore, Hines' claims that Liberty violated Virginia's Retail Franchising Act and Consumer Protection Act (SAC ¶ 75) should be DISMISSED with prejudice.

### c.     Maryland Franchise Registration and Disclosure Law and Maryland Consumer Protection Act

Hines further alleges Liberty violated Maryland's Franchise Registration and Disclosure Law and Consumer Protection Act. SAC ¶¶ 74, 86. Maryland's Franchise Registration and Disclosure Law applies to Hines' purchase of the Liberty franchise territories in Maryland, because the franchise fee exceeds $100.00, Hines is a resident of Maryland, and the franchised business operated in Maryland. Md. Code Ann., Bus. Reg. § 14-203(a) (1992); SAC ¶¶ 2, 5–9; Compl. ¶¶ 2, 9–11. Therefore, the Maryland Franchise Registration and Disclosure Law applies to the transactions at issue, and will govern Hines' allegations that Liberty violated a state statute.

The Maryland Franchise Registration and Disclosure Law requires that "[a]n action under this section must be brought within 3 years after the grant of the franchise." Md. Code Ann., Bus. Reg. § 14-227(e). Hines' franchise agreements are dated July 3, 2012 (ECF No. 1-5 at 19) and August 7, 2012 (ECF Nos. 1-6, 1-7 at 19). Hines attempted to file his first counterclaim on February 8, 2017, ECF Nos. 52, 53, well past the three year statute of limitations for bringing an action under Maryland's Franchise Resolution and Disclosure Law. *See Fabbro v. DRX Urgent*

---

[10] Hines' two Liberty franchise offices were located at 1658-B Annapolis Road, Odenton, Maryland, and 2030 Liberty Road, Eldersburg, Maryland. Answer, ECF No. 41 at 54–55.

*Care, LLC*, 616 F. App'x 485, 490 (3d Cir. 2015) (upholding dismissal of claims brought pursuant to the Maryland Franchise Registration and Disclosure Law, "because, as is evident on the face of the pleadings, these claims were not 'brought within 3 years after the grant of the franchise'") (internal citations omitted).  Hines' allegations that Liberty failed to comply with Maryland's Franchise Registration and Disclosure Law are barred by the statute of limitations.

Further, Maryland's Consumer Protection Act provides protection for consumers who are purchasing goods or services "which are primarily for personal, household, family, or agricultural purposes."  Md. Code Ann., Com. Law § 13-101 (2013).  By its terms, the act does not apply to Hines' purchase of the Liberty franchises.  Accordingly, Hines' allegations that Liberty violated Maryland's Franchise Registration and Disclosure Law and Consumer Protection Act should be DISMISSED with prejudice.

### 4.    Count IV—Violations

In Count IV, Hines discusses "the system" by addressing Liberty's poor success rate and practice of reselling territories of previously failed Liberty franchises to new franchisees (SAC ¶¶ 93–101); and Liberty's failure to advertise and diversion of franchisee fees paid for advertising to other purposes (SAC ¶¶ 103–108, 113–16).[11]  Hines alleges that these Liberty practices are willful and unconscionable (SAC ¶¶ 90–91); and violate the Franchise Rule (SAC ¶¶ 87, 109), public policy (SAC ¶¶ 88–89), and federal and state laws protecting consumers and franchisees (SAC ¶ 92).  As discussed above, the Franchise Rule does not provide a private right of action for franchisees to bring suit to allege a franchisor sold them a failed franchise without proper disclosure.  Also addressed above, Hines has failed to raise a claim with respect to the Maryland

---

[11] Paragraphs 113 and 115–116 repeat allegations contained in paragraphs 106 and 108.

Franchise Registration and Disclosure Law within the statute of limitations, and the remaining state statutes raised in the second amended counterclaim do not apply.

Hines did not raise his allegations regarding Liberty's failure to advertise and failure to appropriately use advertising fees in his breach of contract count, Count I.   To the extent that Hines is attempting to bring a breach of contract claim, such claim should be DISMISSED without prejudice to Hines specifying the contract provision allegedly breached by Liberty.   To the extent Hines is attempting to raise a tort claim based on these allegations, the claim must fail.   To bring a tort claim in relation to a contract, a party must allege a breach of duty that is *different from* the duty that "exist[s] between the parties solely by virtue of the contract." *Foreign Mission Bd. of Southern Baptist Convention v. Wade,* 409 S.E.2d 144, 148 (Va. 1991); *see Kamlar Corp. v. Haley,* 299 S.E.2d 514, 518 (Va. 1983) (requiring "proof of an independent, wilful tort, beyond the mere breach of a duty imposed by contract").   To the extent that Liberty owes Hines a duty to advertise, such a duty only exists as a result of the franchise agreements.   Any tort claim that Hines is attempting to raise based on Liberty's failure to advertise should be DISMISSED without prejudice.

### 5.    Count V—"The System"

In the one paragraph that makes up Count V, Hines asserts that the system, as described in Count IV, is not "getting it done," and that too many Liberty franchises will not "make it."   SAC ¶ 120.   These allegations fail to state a claim for which relief can be granted, and Count V should be DISMISSED without prejudice.

### 6.     Count VI—"Ominbus and General Points"

In this last count, Hines summarizes several points that were made in his previously filed counterclaims, that were left out of the second amended counterclaim "to stay away from wordiness." SAC ¶ 122. The first paragraph of this section states:

> Unfair and Deceptive information from Liberty Tax and John Hewitt - which takes the form of Misrepresentation, Concealment, Omission, Deceit, Lies, Unjust Enrichment, Conversion, Statutory Negligence, Malicious Interference, Criminal Mischief, and Fraud, to name most - possesses the tendency to mislead and create unexpected, unanticipated, unfavorable, obverse, and financially and fiscally threatening outcomes, inconsistent with, and adverse to, the inherent outcomes and expectations implied by the common law concept of the Implied Covenant of Good Faith and Fair Dealings.

SAC ¶ 121. Hines then provides the definitions obtained "[o]ff the Internet" for misrepresentation, implied covenant of good faith and fair dealing, inducement, concealment, omission, conversion, unjust enrichment, deceit, and tortious interference. SAC ¶¶ 123–32. Next, Hines provides a list of seventeen "Agents of Loss" followed by a list of forty-two "Facts." SAC ¶¶ 135–36. Hines provides these two lists "to give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests," to "frame the issues and provide the basis for informed pretrial proceedings," and to give an account of "what would come from the defendant[] in the trial." SAC ¶ 133 (internal quotation marks omitted). Hines explains that these lists are bullet points that were used as a table of contents in a previously filed counterclaims. *Id.* The lists consist of items such as "(a) the May, 2012, Open House, meeting 'John', and John's 1/3, 1/3, 1/3," and "(b) the Liberty Disclosure Document and 1,000 returns," SAC ¶ 135, and do not provide any substantive allegations.

Hines has not alleged the elements of any cause of action in Count VI, and merely lists the definitions of several legal words and provides several bullet points for items he would like to

explain at a later time.   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted).   Accordingly, Hines' Count VI should be DISMISSED without prejudice.

### 7.   Recommendation

For the reasons stated above, Liberty's motion to dismiss Hines' second amended counterclaim with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) should be GRANTED in part and DENIED in part, , as the Court recommends dismissing some claims without prejudice.   Hines' counterclaims brought pursuant to the Franchise Rule, the Virginia Retail Franchising Act, the Virginia Consumer Protection Act, the Maryland Franchise Registration and Disclosure Law, and the Maryland Consumer Protection Act should be DISMISSED with prejudice.   Hines' remaining counterclaims should be DISMISSED without prejudice.[12]

### VI.   MOTION TO STAY
### HINES' SECOND AMENDED COUNTERCLAIM
### PENDING ARBITRATION

Because Liberty's motion to dismiss may not be granted with prejudice as to all of Hines' claims, and Hines has expressed an interest in filing a third amended counterclaim,[13] the Court will address Liberty's motion to enforce the arbitration clauses contained in the franchise

---

[12] "When a *pro se* complaint contains a potentially cognizable claim, a plaintiff should be allowed to particularize the claim." *U.S. ex rel. Kwami v. Ragnow*, No. 2:09cv11, 2009 WL 6560227, at *1 (E.D. Va. Feb. 6, 2009) (quoting *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965)).

[13] Hines has filed a motion for leave to file a third amended counterclaim, ECF No. 87, which was denied on September 20, 2017 due to Hines' failure to attached the proposed third amended counterclaim.   ECF No. 91.

agreements and motion to stay Hines' counterclaims pending arbitration.   Liberty asserts "Hines agreed to arbitrate any claim he has against Liberty 'which in any way relates to or arises out of [the Franchise] Agreement, or any of the dealings of the parties [t]hereto,'" and "to the extent Hines wishes to assert a claim against Liberty, he must arbitrate it 'before the American Arbitration Association.'"   ECF No. 89 at 2 (citing the Maryland Addendum).

In determining the validity and enforceability of the Maryland addenda to the franchise agreements, the Court will apply the following policies.   Federal policy favors arbitration, and the Supreme Court has directed courts to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).   Section 2 of the Federal Arbitration Act ("FAA") makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."   9 U.S.C. § 2.   "The Supreme Court has directed that 'we apply ordinary state-law principles that govern the formation of contracts' when assessing whether the parties agreed to arbitrate a matter."   *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Like federal policy, "the public policy of Virginia favors arbitration."   *TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 557 S.E.2d 199, 202 (Va. 2002).   Virginia law, like the FAA, provides that a written arbitration agreement "is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract."   Va. Code. Ann. § 8.01-581.01 (2017).   "Under limited circumstances, 'equity may require invalidation of an arbitration agreement that is unconscionable.'"   *Carson v. LendingTree LLC*, 456 F. App'x 234, 236 (4th Cir. 2011) (quoting *Murray v. United Food & Commercial Workers,* 289 F.3d 297, 302

26

(4th Cir. 2002)).   Hines bears the burden of proof for this affirmative defense.  *Id.* (citing *Tillman v. Commercial Credit Loans, Inc.,* 655 S.E.2d 362, 369 (N.C. 2008)).

In addition to signing the three franchise agreements, Hines signed the three Maryland addenda.   ECF No. 1-5 at 21; ECF Nos. 1-6, 1-7 at 23.   Each addendum is one page long, and contains the following arbitration clause directly above Hines' signature line:

> You agree to bring any claim against us, including our present and former employees, agents, and affiliates, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association.

*Id.*

Hines has not directly attacked the arbitration clause or the Maryland addenda, but has asserted that the franchise agreements are unconscionable, and that Liberty fraudulently induced him into signing the franchise agreements.   SAC ¶¶ 22–26, 41–46, 60.   The United States Supreme Court has found that, under the statutory provisions of the FAA, a district court cannot adjudicate claims that an arbitration clause is unenforceable because the underlying contract is the result of fraud.   *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404 (1967) (holding the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally" and "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate"); *see also Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001) (reversing district court holding that arbitration agreement was unenforceable due to allegations of fraud because "[c]laims of fraud applicable to the entire contract are generally resolved by an arbitrator"); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671–72 (4th Cir. 2016) (holding "any grounds given for revocation must concern the validity of the arbitration agreement in particular, not simply the validity of the underlying contract as a

whole") (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)).[14]   Because Hines has only attacked the franchise agreements as the product of fraud, and has not attacked the arbitration agreement contained in the separately signed Maryland addendums, the Court recommends a finding that the arbitration clauses are enforceable.

Accordingly, Liberty's motion to stay should be GRANTED in part, finding the arbitration clauses contained in the Maryland addenda are enforceable.   Because the Court has recommended dismissing Hines' second amended counterclaim, Liberty's motion to stay the counterclaim pending arbitration should be DENIED AS MOOT.   To the extent Hines intends to pursue any of the counterclaims dismissed without prejudice, he is DIRECTED to raise those claims with an arbitrator pursuant to the arbitration clauses in the franchise agreements.

---

[14] Even if Hines had directly attacked the arbitration agreement in the Maryland addenda, his claims of unconscionability due to unequal bargaining power are not persuasive.   Under Virginia law, a contract is unconscionable if it is one that "'no man in his senses and not under delusion would make on the one hand, and [that] no honest and fair man would accept on the other.'"   *Lee v. Fairfax Cty. Sch. Bd.*, 621 F. App'x 761, 762 (4th Cir. 2015) (*per curiam*) (quoting *Chaplain v. Chaplain*, 682 S.E.2d 108, 113 (Va. App. 2009)).   "The inequality must be so gross as to shock the conscience." *Id.* (citation omitted).   "[T]he law currently does not provide a basis for a court to invalidate an arbitration agreement because it was formed by 'parties of greatly disparate economic power.'"   *March v. Tysinger Motor Co., Inc.*, No. 3:07cv508, 2007 WL 4358339, at *6 (E.D. Va. Dec. 12, 2007); *see also Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (enforcing arbitration agreement and dismissing argument that requiring consumers to arbitrate against company is against public policy relating to consumer protection); *Hawthorne v. BJ's Wholesale Club*, No. 3:15cv572, 2016 WL 4500867, at *6 (E.D. Va. Aug. 26, 2016) ("when plaintiffs maintain an option to refuse to sign the form and to work elsewhere," an arbitration clause in an employment contract is not unconscionable).   Further, Virginia courts have not required mutuality in arbitration agreements, and have upheld arbitration agreements that only bind one party.   *See Sanders v. Certified Car Ctr., Inc.*, 93 Va. Cir. 404 (Va. Cir. 2016) (enforcing an arbitration clause that permitted car dealer to litigate if the buyer did not pay any sums due to the dealer, but required the buyer to arbitrate any claims for $1,000.00 or more); *Bramow v. Toll VA, LP*, 67 Va. Cir. 56 (Va. Cir. 2005) (enforcing arbitration agreement that only bound purchaser of home and not seller); *See also JTH Tax, Inc. v. Lee*, No. 2:06cv486, 2007 WL 1795751, at *5 (E.D. Va. June 19, 2007) (finding an arbitration clause similar to the one at issue in this case was not unconscionable).

## VII.  RECOMMENDATION

For the forgoing reasons, the Court RECOMMENDS that Liberty's motion to dismiss Hines' second amended counterclaim with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 88, be GRANTED in part and DENIED in part, as the Court recommends dismissing some claims without prejudice.   Hines' counterclaims brought pursuant to the Franchise Rule, the Virginia Retail Franchising Act, the Virginia Consumer Protection Act, the Maryland Franchise Registration and Disclosure Law, and the Maryland Consumer Protection Act should be DISMISSED with prejudice.   Hines' remaining counterclaims should be DISMISSED without prejudice.

The Court further recommends that Liberty's motion to stay should be GRANTED in part, finding the arbitration clauses contained in the Maryland addenda are enforceable, and Liberty's motion to stay Hines' second amended counterclaim pending arbitration, ECF No. 88, be DENIED AS MOOT.

Should Hines intend to pursue any of the counterclaims dismissed without prejudice, he is DIRECTED to raise those claims with an arbitrator pursuant to the arbitration clauses in the franchise agreements.

## VIII.  REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal

Rules of Civil Procedure.   Rule 6(d) of the Federal Rules of Civil Procedure permits an extra 3 days, if service occurs by mail.   A party may respond to any other party's objections within 14 days after being served with a copy thereof.   *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.   A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
December 15, 2017

30